UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | ) ) ) | |
|---|---|---|
| *Plaintiff*, | ) ) | Case No. 2:08-cv-303 |
| v. | ) ) | Judge Mattice |
| HVAC, INC., GREENE COUNTY BOARD OF EDUCATION, *et al.*, | ) ) ) | |
| *Defendants*. | ) | |

## MEMORANDUM AND ORDER

**I. INTRODUCTION**

Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Penn National") brings this action seeking a declaration of its rights and duties under two insurance policies issued to Defendant HVAC, Inc. ("HVAC"). As a preliminary matter, the Court has not yet addressed whether it will exercise jurisdiction over this declaratory judgment action. Also pending before the Court is Penn National's Motion for Summary Judgment [Court Doc. 27]. For the reasons discussed below, the Court will **EXERCISE** its discretionary jurisdiction over this matter and will **GRANT** Penn National's Motion for Summary Judgment [Court Doc. 27].

**II. FACTS AND PROCEDURAL POSTURE**

Penn National issued two insurance policies to HVAC. (Court Doc. 1, Compl. ¶ 6.) One policy is a Commercial General Liability ("CGL") Policy, No. CL9-0038916, and the other is a Commercial General Umbrella Liability ("Umbrella") Policy, No. UL9-0038916. (*Id.*) These policies were in effect from October 1, 2003 to October 1, 2004. (*Id.* ¶ 7.)

Penn National initiated this declaratory judgment action to obtain a declaration from the Court as to whether the coverage under these policies requires Penn National to defend and indemnify HVAC in a pending state court action involving tort personal injury claims due to mold and asbestos exposure. (*Id.* ¶ 6.) The state court action, filed in Greene County (Tennessee) Circuit Court and styled *Amanda L. Britton, and, Samantha Britton, b/n/f, Robert L. Britton, and, Leasia Britton, and, Robert L. Britton, and, Leasia Britton, and, Heth T. Seaton, b/n/f, Freddie Seaton, and, Tammy Seaton, and, Freddie Seaton, and, Tammy Seaton, v. The Greene County Board of Education, and, Indoor Environmental Solutions, and, HVAC, Inc.*, Docket No. 06CV294, concerns allegedly negligent services performed by HVAC in conjunction with the removal of mold and asbestos from Ottway Elementary School. (Court Doc. 1-1, State Compl.) The complaint in this state court action alleges that Defendant Greene County Board of Education ("Board") ordered environmental testing of the school to take place in October 2003 and then contracted with HVAC to remove the mold and asbestos. (*Id.* ¶¶ 12-16, 22.) The complaint further alleges that the Plaintiffs' minor children suffered bodily injury resulting from the negligent removal of mold and asbestos, will suffer from reduced earning capacity and pain and suffering in the future, and that Plaintiffs suffered personal injury through medical expenses. (*Id.* ¶¶ 22-30.)

Penn National is currently defending HVAC pursuant to a reservation of rights in this action. (Compl. ¶ 13.) Penn National asserts, however, that the CGL Policy included a "Fungi or Bacteria Exclusion" and an "Asbestos Exclusion." (*Id.* ¶ 8-9.) The former allegedly excludes coverage for "bodily injury, property damage, or personal injury arising

from actual, alleged, or threatened inhalation, ingestion, contact with, exposure to, existence of, or presence of, any fungi or bacteria on or within a building or structure, including its contents." (*Id.* ¶ 8.) The latter exclusion includes a similar limitation of coverage related to bodily injury, personal injury or property damage resulting from exposure to asbestos. (*Id.* ¶ 9.) Penn National further asserts that Exclusion N of the Umbrella Policy issued to HVAC contains an "absolute asbestos exclusion" which excludes asbestos-related injury from coverage and relieves Penn National of any duty to defend or pay damages resulting from the presence of or exposure to asbestos. (*Id.* ¶ 10.) In addition, the Umbrella Policy contains a Fungi or Bacteria Exclusion, which excludes coverage under language essentially identical to the exclusion found in the CGL Policy. (*Id.* ¶ 11.)

### III. DISCUSSION

Before addressing the merits of Plaintiff's action, the Court must first determine whether it should exercise its discretionary jurisdiction over this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201-202.

#### A. Discretionary Jurisdiction

In the instant action, Penn National seeks a judgment under the Declaratory Judgment Act, 28 U.S.C §§ 2201-202. The Declaratory Judgment Act grants district courts discretionary jurisdiction over actions within its purview. *Id.* § 2201 (providing that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)). This

-3-

statutory discretion is broad, but not unbounded. Defendants Britton and Seaton have asked the Court to decline to exercise its discretionary jurisdiction. (Court Doc. 26.)

The United States Court of Appeals for the Sixth Circuit has provided specific guidance to district courts faced with the decision of whether to hear a declaratory judgment claim. District courts should consider:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). The Court will consider each *Grand Trunk* factor in turn.

1. *Whether the declaratory action would settle the controversy*.

In *Scottsdale Insurance Company v. Flowers*, 513 F.3d 546 (6th Cir. 2008), the Sixth Circuit acknowledged that two lines of precedent had developed under this factor. One concluded that a declaratory judgment action "settled the controversy" if it decided the insurance coverage controversy, even though it did not help resolve the underlying state action. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003). The other found that the declaratory judgment action would not "settle the controversy" because it did not settle the ultimate controversy between the parties in state court. *See Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812-13 (6th Cir. 2004).

-4-

In *Flowers*, the court reconciled these two theories by noting that factual differences in the cases led to the divergent outcomes. 513 F.3d at 555-56. The court held that the facts of that case were more aligned with *Northland* in that the declaratory judgment action would settle the controversy because it would settle the only issue before the federal court–whether there was insurance coverage. *Id*. at 556. The court found particularly compelling the fact that coverage could not be addressed by the state court, as the insurance company was not a party to the state court proceeding. *Id*.

In this declaratory judgment action, the only issue before the Court is whether the insurance policies Penn National issued to HVAC exclude the coverage at issue in the underlying state action; that is, if the policies successfully and explicitly exclude coverage for bodily injury and personal injury based on exposure to mold and asbestos. The state court complaint sounds entirely in tort to determine liability of Defendants Board and HVAC for the exposure of and resulting injury to three elementary-age students to mold and asbestos that was allegedly present in their school. (State Compl.) It does not raise any issues as to insurance coverage. There is no indication that Penn National has filed a declaratory judgment action in Tennessee state court. Penn National has instead chosen to file this action to have these coverage issues decided.

The Sixth Circuit has held that a declaratory judgment action would settle the controversy when the insurance company "was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court." *Northland*, 327 F.3d at 454; *see also Flowers*, 513 F.3d at 556 (where insurance company was not a party to the state court litigation, the coverage issue "was not and could not be considered.") The same is true in this case. The only issue pending

-5-

before the Court is whether the insurance policies provide coverage for the claims in the underlying state court action. Resolution of the declaratory judgment action would settle that controversy.

Accordingly, the Court finds that this declaratory judgment action would settle the controversy between the parties and that this factor weighs in favor of exercising jurisdiction.

> 2. *Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue.*

The second *Grand Trunk* factor is closely related to the first. *Flowers*, 513 F.3d at 557. "[I]t is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id*. The Court's focus in deciding this factor must be on "the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Id*.

In this case, the declaratory judgment action would resolve the question of whether Penn National's CGL Policy and Umbrella Policy, both issued to HVAC, offer coverage for bodily injury and personal injury related to mold and asbestos exposure. As noted above, the coverage issue is not before the state court because Penn National is not a party to that action. There is nothing impairing this Court's ability to decide the coverage issue. Accordingly, the Court will be able to make a final determination as to coverage and that determination will clarify the legal relations between the parties. Thus, the second factor weighs in favor of exercising jurisdiction.

> 3. *Whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata.*

"The third factor is meant to preclude jurisdiction for declaratory plaintiffs who filed

their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *Flowers*, 513 F3d. at 558. Courts are reluctant to impute an improper motive where there is no evidence of such. *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990). The state court action began in May 2006 and Penn National initiated this suit over two years after the Brittons and Seatons filed that action. (State Compl. p. 1.) "[W]hen the plaintiff has filed his claim after the state court litigation has begun, we have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of the action.'" *Flowers*, 513 F.3d at 558 (quoting *Bituminous*, 373 F.3d at 814).

Penn National's pleadings do not suggest that it is seeking a procedural advantage or acting in bad faith in bringing the instant lawsuit. Moreover, as Penn National is not a party to the state court action, the issue of coverage is not properly before that court. Accordingly, the third *Grand Trunk* factor weighs in favor of exercising jurisdiction.

> 4. *Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction.*

The fourth *Grand Trunk* factor addresses concerns of comity and federalism inherent in certain declaratory judgment actions. To aid in this analysis, the Sixth Circuit has identified three sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

-7-

*Bituminous Cas. Corp.*, 373 F.3d at 814-15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)). Each such sub-factor will be addressed in turn.

> a. *Whether the underlying factual issues are important to an informed resolution of the case.*

The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560.

The state court complaint shows that the factual issues in that case are: (1) whether Defendant Board knew about the dangerous conditions in Ottway school and breached a duty to protect students from these conditions; (2) whether Defendant HVAC was negligent in removing the mold and asbestos from the school; (3) the impact, if any, on the health of the children in question; and (4) what damages resulted from any negligence on the part of Defendants Board and HVAC. In the action before this Court, Defendants Britton and Seaton argue against exercising jurisdiction by claiming that the Court will have to make extensive factual inquiry as to when HVAC performed these services, the type of services performed, and the materials found and removed from the school. (Court Doc. 26 pp. 5.)

The Court disagrees. The state court complaint alleges that the environmental testing took place in October 2003, followed by the Board contracting with HVAC for removal of mold and asbestos. (State Compl. ¶¶ 15-16, 22.) The policies at issue provide insurance coverage for HVAC from October 1, 2003 to October 1, 2004. (Compl. ¶ 7.) This implicates Penn National under the policies for at least part of the time in which this work was completed, and no other factual inquiry need be made. Furthermore, there is no need for the Court to determine what work was performed by HVAC or what substances

-8-

were present in the school. The complaint alleges that these injuries resulted from exposure to mold and asbestos. (State Compl. ¶¶ 20, 22-24.) Under Tennessee law, to make a declaration about Penn National's duty to defend, or lack thereof, the Court can rely on the factual allegations in the complaint. *Travelers Indem. Co. of America v. Moore & Associates, Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007). None of the factual issues necessary to resolve the state court action will be important or necessary to the Court in determining the coverage issue; accordingly, resolution of the declaratory judgment action does not depend on any factual issue in the underlying case, and this sub-factor weighs in favor of exercising jurisdiction.

> b.  *Whether the state trial court is in a better position to evaluate those actual issues than is the federal court.*

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. State courts are generally considered to be in a better position to analyze novel questions of state law. *Travelers Indemnity Co. v. Bowling Green Professional Assoc.*, 495 F.3d 266, 272 (6th Cir. 2007). "This consideration appears to have less force when the state law is clear and when the state court is not considering the issues." *Flowers*, 513 F.3d at 560.

Defendants Britton and Seaton state that Penn National has not addressed whether a general fungi or bacteria exclusion in an insurance policy involves a novel question of state law; however, Defendants do not affirmatively claim or assert that such a question is indeed novel. In the absence of any relevant policy arguments supporting a contention that this would be better resolved in state court, the Court finds that this is a straightforward issue of contract construction and that Penn National does not present a novel question

of state law.

Tennessee state law governing insurance contract construction is well-established and offers the Court an abundance of legal precedent on which the Court can rely in assessing the language in the insurance policy provisions. Moreover, the Sixth Circuit has held that, when an insurance company, as in this case, "[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity." *Northland*, 327 F.3d at 454. Because, under Tennessee law, Penn National is not a party to the state court action, this Court's exercise of jurisdiction over the declaratory judgment action would not offend comity principles. Accordingly, this sub-factor weighs in favor of exercising jurisdiction.

> c. *Whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.*

The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. Generally, the interpretation of insurance contracts is a question of state law with which state courts are more familiar. *Travelers*, 495 F.3d at 273. "The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Bituminous*, 373 F.3d at 815. While the Court is sometimes called upon to interpret and apply state law as an incident of its diversity jurisdiction, it is clearly not as well positioned to make judgments of state public policy as a state court. Accordingly, the

-10-

third sub-factor weighs against exercising jurisdiction.

The negative implications of the third sub-factor do not outweigh the other two sub-factors. Overall, the fourth *Grand Trunk* factor weighs in favor of exercising jurisdiction.

### 5. *Whether there is an alternative remedy which is better or more effective.*

"A district court should 'deny declaratory relief if an alternative remedy is better or more effective.'" *Flowers*, 513 F.3d at 562 (quoting *Grand Trunk*, 746 F.2d at 326). One of the alternative remedies available to Penn National is to seek a declaratory judgment in Tennessee state court. Tennessee law provides an avenue of relief for a party in Penn National's position. *See* Tenn. Code Ann. §§ 29-14-101 to 29-14-113.

Tennessee state court is probably the better forum for this action. The state court might have been able to combine the declaratory action with the liability action so that all issues could be resolved by the same judge. *See Bituminous*, 373 F.3d at 816 (holding that, in a declaratory judgment, the preferable forum is normally the state court in which the underlying litigation is pending). State courts are generally in a superior position to interpret insurance contracts and to weigh issues of public policy with regard to the insurance industry. *See id*. Given that there is substantial precedent in Tennessee case law as to the construction of insurance policies and contracts generally, however, it cannot be said that this Court is clearly inferior to the state court in this regard.

Overall, the final factor weighs against exercising jurisdiction. *Travelers*, 495 F.3d at 273 (finding that the alternative remedy of a state court declaratory judgment action or indemnity action "weighed against exercising federal discretionary jurisdiction.")

### 6. *Weighing the factors*

-11-

The Sixth Circuit provides little guidance as to how the *Grand Trunk* factors should be weighed one against the other. *See Flowers*, 513 F.3d at 563 ("[W]e have never indicated how these *Grand Trunk* factors should be balanced when reviewing a district court's decision for abuse of discretion.") In this case, four of the five factors weigh in favor of exercising jurisdiction. The Court cannot say that the one factor against exercising jurisdiction outweighs the other four factors. Accordingly, the Court will **EXERCISE** its discretionary jurisdiction over the instant matter.

Having decided in favor of exercising its discretionary declaratory jurisdiction, the Court will now apply itself to the merits of Plaintiff's action.

**B. Summary Judgment**

*1. Standard*

Penn National filed their Motion for Summary Judgment on June 16, 2009. (Court Doc. 27.) None of the Defendants have filed a response to this Motion, and the Court deems Defendants to have waived opposition to the Motion. E.D.TN. LR 7.1. The Court, however, cannot automatically grant the summary judgment motion merely because Defendants have not filed a response in opposition. The Court is required to examine the record and determine whether the movant has met its burden of demonstrating the absence of a genuine issue of material fact and that it is entitled to summary judgment as a matter of law. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998); *Wilson v. City of Zanesville*, 954 F.2d 349, 351 (6th Cir. 1992); *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991).

Summary judgment is proper where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or by simply " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477

-13-

U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### 2. Analysis

In cases such as this, arising under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, the Court must apply the choice of law rules of the state in which the Court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003). In Tennessee, the law of the place where a contract is made governs the construction and validity of the contract. *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 466 (Tenn. 1973). It appears that both policies were signed at an agency branch location in Kingsport, Tennessee. (Court Docs. 1-2 & 1-3 p. 1.) Therefore, the Court will apply Tennessee law to review the contractual provisions at issue.

Insurance contracts are subject to the same rules of construction and enforcement as contracts generally. *Standard Fire Ins. Co. v. Chester O'Donley & Assoc., Inc.*, 72 S.W.2d 1, 7 (Tenn. Ct. App. 1998). Terms in the contract should be given their natural and ordinary meaning and contracts should be interpreted as written. *Id*. Insurance policies should be construed as a whole in a reasonable and logical manner. *Setters v. Permanent*

*Gen. Assurance Corp.*, 937 S.W.2d 950, 953 (Tenn. Ct. App. 1996).

Ambiguous insurance contracts, and in particular, ambiguous provisions limiting coverage, are construed in favor of the insured. *American Justice Ins. Reciprocal v. Hutchinson*, 15 S.W.3d 811, 815 (Tenn. 2000). The insurer bears the burden of showing that an exemption applies. *Interstate Life & Acc. Ins. Co. v. Gammons*, 56 Tenn. App. 441 (1966). "Exclusions should not be construed broadly in favor of the insured, nor should they be construed so narrowly as to defeat their intended purpose." *Standard Fire*, 972 S.W.2d at 8.

Penn National points to two documents in the CGL Policy that exclude the coverage at issue in the state court action. The first is the Fungi or Bacteria Exclusion, Forms CG 21 67 0402 and 71 1003 0702. (Court Doc. 1-2, CGL Policy pp. 110-111.) The first form contains a section with language that is intended to be included in the general Exclusions section for bodily injury and property damage liability. This section states the following:

    2. Exclusions

        This insurance does not apply to:

        Fungi or Bacteria

        a.    "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

        b.    Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up,

-15-

> removing, containing, treating, detoxifying,
> neutralizing, remediating or disposing of, or in
> any way responding to, or assessing the
> effects of "fungi" or bacteria, by any insured or
> by any other person or entity.

(*Id.* p. 110.) This form contains another section with almost identical language to be included in the Exclusions section concerning liability for personal injury and advertising injury. (*Id.*) Fungi is defined for both exclusions as "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi." (*Id.*) The second form, 71 1003 0702, contains a summary of the detailed exclusions outlined above. (*Id.* at 111.)

The second relevant document in the CGL Policy is the Asbestos Endorsement, Form 71 09 48 0103. (*Id.* at 131.) This form states:

> The coverage afforded by this policy does not apply to
> "bodily injury," "personal and advertising injury," or "property
> damage" arising out of:
>
> 1) Inhaling, ingesting or prolonged physical exposure to
> asbestos or goods or products containing asbestos; or
> 2) The use of asbestos in constructing or manufacturing any
> good, product or structure; or
> 3) The removal of asbestos from any good, product or
> structure; or
> 4) The manufacture, transportation, storage or disposal of
> asbestos or goods or products containing asbestos.
>
> The coverage afforded by the policy does not apply to
> payment for the investigation or defense of any loss, injury
> or any cost, fine or penalty or for any expense or claim or
> suit related to any of the above.

(*Id.*)

Penn National also points to similar documents in the Umbrella Policy. There is no separate form excluding asbestos coverage from this policy, but the relevant language

-16-

appears in the general Exclusions section as follows:

> 3. Exclusions
>
> This insurance does not apply to
>
> . . .
>
> n. "Bodily injury," "personal injury" or "property damage" arising out of the asbestos hazard.
>
> > We shall have no obligation under this policy:
> >
> > (1) to investigate, settle or defend any claim or suit against any insured alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the asbestos hazard; or
> >
> > (2) to pay, contribute to or indemnify another for any damages, judgements, settlements, loss, costs or expenses that may be awarded or incurred by reason of any such claim or suit or any injury or damage, or in complying with any action authorized by law and relating to such injury or damage.
> >
> > As used in this exclusion, asbestos hazard means:
> >
> > (a) an actual exposure or threat of exposure to the harmful properties of asbestos; or
> >
> > (b) the presence of asbestos in any place, whether or not within a building or structure.
> >
> > *Asbestos means the mineral in any form, including but not limited to fibers or dust.*

(Court Doc. 1-3, Umbrella Policy pp. 5-7.) The Umbrella Policy also contains a Fungi or Bacteria Exclusion, Forms 71 0994 0702 and 71 10 06 0702, and these forms indicate that the language is intended to be included in the above-referenced Exclusions section of the

-17-

policy. (*Id.* at 20-21.) The language in both forms is almost identical to the Fungi or Bacteria Exclusion form included in Penn National's CGL Policy, except that the more detailed form, 71 0994 0702, excludes liability for bodily injury, property damage, personal injury, and advertising injury in one section rather than two. (*Id.* at 20.) The definition of "fungi" is also identical to the definition contained in the CGL Policy. (*Id.* at 20.)

The Court finds that these provisions are explicit, unambiguous, and clearly exclude from the policies any coverage for bodily injury, personal injury or property damage resulting from exposure to mold or asbestos. The CGL Policy and Umbrella Policy contain the same language excluding all coverage for bodily injury, personal injury or property damage related to fungi or other bacteria, and the definition of fungi explicitly includes mold. (CGL Policy p. 110; Umbrella Policy p. 20.) The asbestos exclusions differ between the two policies, but the language is clear in both policies that there is no coverage for alleged bodily injury, personal injury or property damage due to asbestos exposure. (CGL Policy p. 131; Umbrella Policy pp. 5-7.)

The state court complaint contains allegations concerning personal injury and bodily injury resulting from exposure to mold and asbestos. (State Compl. ¶¶ 20, 22-24.) This complaint named HVAC as a defendant and alleged that HVAC performed services including removal or remediation of mold and asbestos negligently so as to cause bodily injury to the minor Plaintiffs and personal injury to the Plaintiffs. (*Id.* ¶¶ 6, 22-24.) The CGL Policy and the Umbrella Policy, in the provisions reproduced above, clearly exclude all coverage for bodily injury and personal injury due to exposure to these substances. In addition, there is language in both policies excluding "loss, cost or expenses" resulting

from, among other things, the removal of fungi or bacteria by the insured. (CGL Policy p. 110; Umbrella Policy p. 20.) This language would clearly apply to any expense relating to a lawsuit alleging negligent removal of mold, which is included in the definition of fungi. Furthermore, the asbestos exclusions for both policies specifically state that Penn National is not obligated to defend the insured or pay any amount to defend in any lawsuit or other action involving injury or damage due to asbestos. (CGL Policy p. 131; Umbrella Policy p. 7.) The language in both policies concerning the coverage at issue is abundantly clear and should be afforded its explicit and obvious meaning.

After reviewing the record, the Court finds that there is no genuine issue of material fact as to whether the CGL Policy and Umbrella Policy provide coverage for bodily injury or personal injury resulting from exposure to mold and asbestos, and there is no genuine issue of material fact as to whether these policies obligate Penn National to defend HVAC in the underlying state court action. Therefore, Penn National's Motion for Summary Judgment will be **GRANTED**.

The Court concludes that the CGL Policy, No. CL9-0038916, and the Umbrella Policy, No. UL9-0038916, do not provide coverage to HVAC to insure against bodily injury or personal injury due to any exposure to asbestos or fungi, including mold. Accordingly, Penn National does not have a duty to defend HVAC in any lawsuit concerning allegations of bodily injury or personal injury due to exposure to asbestos or fungi, including mold.

IV.     **CONCLUSION**

For the reasons explained above, the Court **EXERCISES** jurisdiction over this declaratory judgment action and **GRANTS** Plaintiff Penn National's Motion for Summary

-19-

Judgment [Court Doc. 27].

A separate judgment will enter.

**SO ORDERED** this 30th day of December, 2009.

_s/ Harry S. Mattice, Jr._
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE
